UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| *In re* BLACK DIAMOND MINING COMPANY, LLC, et al. | ) ) ) ) |
| | Civil No. 15-96-ART |
| | ) ) |
| TAFT A. MCKINSTRY, *Trustee of the BD Unsecured Creditors Trust*, and DINSMORE & SHOHL LLP, | ) ) ) ) |
| Appellants, | ) **MEMORANDUM OPINION AND ORDER** |
| | ) ) |
| v. | ) ) |
| RICHARD HOLMES ENTERPRISES, LLC, | ) ) ) |
| Appellee. | ) |

*** *** *** ***

The bankruptcy court ordered Richard Holmes Enterprises, LLC ("Holmes Enterprises") to deposit funds into an escrow account if it wants to reopen the bankruptcy case. Holmes Enterprises now moves to stay that order. But under the Bankruptcy Code, the bankruptcy court has the power to order Holmes Enterprises to make such deposits. And Holmes Enterprises has failed to make a substantial showing that the bankruptcy court abused its discretion when it required Holmes Enterprises to do so here. Holmes Enterprises's motion for a stay is therefore denied.

I.

In 2008, Black Diamond Mining Company declared bankruptcy. *See In re Black Diamond Mining Co., LLC*, Case No. 08-70066-THF (Bankr. E.D. Ky. 2008) [hereinafter

*Underlying Bankruptcy*].  After trying to reorganize, Black Diamond liquidated instead.  *Id.*, D.E. 1562.  The liquidation plan created the BD Unsecured Creditors Trust (the "trust") to collect and manage the assets of Black Diamond's bankruptcy estate.  *Id.* Ex. A art. IV(C).  Those assets included the estate's claims against Alvarez & Marsal North America, LLC and its officers, Ira Genser and Larry Tate (collectively, "A&M"), *Underlying Bankruptcy*, D.E. 1562 at 60, who had taken over management of Black Diamond during the reorganization process, *see id.*, D.E. 56 (appointing A&M into a management position within Black Diamond).

The bankruptcy court appointed appellant Taft A. McKinstry as the trustee for the trust as well as the representative of the bankruptcy estate.  *Id.*, D.E. 1562 at 34–35.  One of the trust's unsecured creditors was Holmes Enterprises,[1] whose principal, Richard Holmes, was also the chair of the Trust Committee advising McKinstry.  R. 3 at 5–6.  The Trust Committee had the right to approve any settlement of the trust's claims against A&M.  R. 35-19 at 47.  After McKinstry was appointed as trustee, she sued A&M.  *See McKinstry v. Sergent et al.*, Case No. 7:10-cv-110-ART [hereinafter *In re Black Diamond I*], D.E. 1-1.  But A&M was not your ordinary party.  Rather, as part of its agreement to help re-organize Black Diamond, it had negotiated an indemnification agreement.  This agreement required the trust to post (and re-post as necessary) "adequate security" for A&M's attorneys' fees and expenses during any litigation brought by the trust against A&M.  *Underlying Bankruptcy*, D.E. 1562 at 163.  The trust did not have enough money to post this adequate security, so Holmes Enterprises made two separate loans to the trust, in part to help fund the

---

[1] Holmes Enterprises was the assignee of Sempra Energy Trading, LLC, which had an unsecured claim of $41.3 million.  *Underlying Bankruptcy*, D.E. 1861.

adequate security to A&M.   *See Underlying Bankruptcy*, Objection of Richard Holmes Enterprises, LLC to Motion of Trustee for Approval of Final Accounting, ¶¶ 9–10 (filed Jun. 1, 2015); *see also id.*, Trustee's Objection to Motion to Reopen at Ex. D (filed Aug. 26, 2015) (email from Holmes to McKinstry stating "let me be perfectly clear that Richard Holmes Enterprises is not committing to put any more money at risk for the posting of additional adequate security").

     After four years of litigation, McKinstry settled the case against A&M.   *See McKinstry v. Genser et al.*, Case No. 7:13-cv-125-ART [hereinafter *In re Black Diamond II*], D.E. 345; *id.*, D.E. 346.   One of the main reasons for settling was that Holmes Enterprises refused to lend the trust more money to pay additional adequate security.   *See id.*, Trustee's Objection to Motion to Reopen at Ex. D (filed Aug. 26, 2015); *id.*, D.E. 2279 ¶¶ 6–10, 16 (A&M's Motion to Increase Adequate Security Amount) (requesting an increase in adequate security from $1,190,000 to $8,250,000).   The members of the Trust Committee had the opportunity to vote on the settlement.   Holmes abstained from voting; the other Trust Committee members voted yes; and thus the settlement was approved.   R. 26 at 15.[2] Thereafter, McKinstry notified this Court of the agreement.   *In re Black Diamond II*, D.E. 342.   When Holmes Enterprises, along with the other beneficiaries, consented to the settlement terms, McKinstry signed the settlement agreement.   R. 26 at 16 (citations omitted).   After the payment of the settlement amount, this Court dismissed the complaint

---

[2] Under Kentucky law, Holmes's abstention was a vote with the majority, meaning it was a vote approving the settlement. *See Pierson-Trapp Co. v. Knippenburg*, 387 S.W.2d 587, 588 (Ky. 1965) ("The rule is that when a quorum of a governing body is present those members who are present and do not vote will be considered as acquiescing with the majority.").

against the A&M parties with prejudice. *In re Black Diamond II*, D.E. 346. No party appealed the order of dismissal. *See generally id.*

Once the settlement agreement was executed, McKinstry proposed initial trust distributions to all of the unsecured creditors. R. 26 at 17. Holmes responded by asking her to "proceed to make distributions." *Underlying Bankruptcy*, Trustee's Objection to Motion to Reopen at Ex. N (filed Aug. 26, 2015). At no point did Holmes tell McKinstry that he had objections to the settlement agreement or that he planned to file adversary claims against her. R. 26 at 18–19.[3] McKinstry then made the initial disbursements of the trust, including $5.77 million in disbursements to Holmes Enterprises. R. 26 at 22–23 (citing *Underlying Bankruptcy*, D.E. 2296-1). On July 14, 2015, the bankruptcy court entered an order granting the final accounting motion, closing Black Diamond's Chapter 11 cases, and discharging the trustee. *Underlying Bankruptcy*, D.E. 2319. Neither Holmes nor Holmes Enterprises appealed the order.

Two weeks later, though, Holmes Enterprises filed a motion to reopen the bankruptcy case under § 350 of the Bankruptcy Code. *Id.*, Motion to Reopen Case for the Limited Purpose of Asserting Claims Against Trustee and Professionals, Ex. 1 (filed July 31, 2015). The Trust Agreement indemnified McKinstry and the Trust Professionals, including appellant Dinsmore & Shohl, LLP ("Dinsmore"), "from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including . . . attorneys' fees" arising out of their actions with respect to the trust. R. 35-19 at 43–44. But at this point,

---

[3] Holmes Enterprises claims that it provided written notice to McKinstry that it reserved all rights or claims regarding the settlement in September 2014, when the settlement concluded. R. 51 at 3. And the promissory note provided that the "Lender's receipt of any payment after the occurrence of an Event of Default shall not constitute a waiver of such default or any of Lender's rights or remedies." *Id.*; R. 53-1 ¶ 5. However, Holmes Enterprises did not inform McKinstry that he intended to exercise these rights until after McKinstry completed the trust's initial and final disbursements.

McKinstry had already disbursed the trust's funds, so the trust had no money with which to indemnify the appellants. *See Underlying Bankruptcy*, D.E. 2296 (Final Accounting of Trustee) (showing full disbursement of the trust funds). This meant that, contrary to the terms of the Trust Agreement, the appellants would have to pay their fees and costs for the ensuing litigation out of pocket.

The bankruptcy court initially granted Holmes Enterprises's motion to reopen. *Underlying Bankruptcy*, D.E. 2333. But McKinstry filed a motion for reconsideration, asking in the alternative that the bankruptcy court at least order Holmes Enterprises to return the money it received in distributions to the trust for indemnification of the appellants. *Id.*, Trustee's Emergency Motion for Reconsideration or to Alter or Amend Order at 6 (filed Sept. 18, 2015). The bankruptcy court denied the motion to reconsider, but it did order Holmes Enterprises to repay $500,000 to the trust's escrow account. *Id.*, D.E. 2348. The court ordered this repayment "to ensure that the Trust can honor its obligation to indemnify the Trustee and other protected persons." *Id.* at 4–5. This repayment was appropriate, the court reasoned, "because Holmes Enterprises accepted distributions of settlement proceeds from the Trust while contemplating pursuing a claim against the Trustee and others for that same settlement." *Id.* at 5. In response, Holmes Enterprises filed a motion to stay the bankruptcy court's order for repayment, *id.*, D.E. 2355, which the bankruptcy court denied, *id.*, D.E. 2371.

## II.

Holmes Enterprises now asks this Court to overrule the bankruptcy court and order a stay. R. 21. To prevail, Holmes Enterprises must "demonstrate more than the mere 'possibility' of success on the merits." *Michigan Coalition of Radioactive Material Users,*

*Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (internal citation omitted).  Instead, Holmes Enterprises must show, at a minimum, "serious questions going to the merits."  *Id.* at 154 (internal quotations and citations omitted).   At the merits stage, this Court reviews a bankruptcy court's exercise of its equitable powers for abuse of discretion.  *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993).   To be entitled to a stay, therefore, Holmes Enterprises must show serious questions as to whether the bankruptcy court abused its discretion in using its equitable powers to condition the reopening of the bankruptcy case on repayment.  Since Holmes Enterprises fails to make this showing, its motion for stay must be denied.

Bankruptcy courts may reopen cases.   11 U.S.C. § 350.   In doing so, bankruptcy courts may take equitable measures to ensure that the reopening of cases is just.  *See In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (holding that § 105 of the Bankruptcy Code empowers bankruptcy courts "to take appropriate equitable measures needed to implement other sections of the Code"); *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991) (In deciding to reopen a case, "the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice.").  If a bankruptcy court finds that reopening would be prejudicial to the other party, "the [c]ourt may condition the reopening of a case on alleviation of such prejudice."  *In re Berry*, 190 B.R. 486, 489 (Bankr. S.D. Ga. 1995).  For example, if reopening places an unfair financial burden on the other side, a bankruptcy court may condition the reopening of a case on reimbursement of the other side's fees and costs.  *See, e.g.*, *In re Oglesby*, 519 B.R. 699, 706 (Bankr. N.D. Ohio) (conditioning the reopening of the bankruptcy case on reimbursement of fees and costs because "the nature of the prejudice experienced by [the

nonmovant] is of a type subject to cure by reimbursement"); *In re Minniear*, 88 B.R. 1005, 1006 (Bankr. W.D. Mo. 1988) (conditioning reopening on compensation of nonmovant's time and expenses incurred during the movant's delay in moving for reopening); *In re Brown*, 60 B.R. 983, 985 (Bankr. S.D. Ohio 1986) (conditioning reopening on payment of nonmovant's attorney's fees "[t]o alleviate any prejudice to [the nonmovant] in allowing debtors to reopen their case"); *In re Scism*, 41 B.R. 384, 388 (Bankr. W.D. Okla. 1984) (requiring the movant to pay reasonable attorney's fees expended by the nonmovant because "[i]t is only reasonable in this case that the [nonmovant] should not bear the burden of the [movant's] error").

Here, reopening the bankruptcy case would prejudice the appellants.  Under the Trust Agreement, the appellants had the right to indemnification by the trust from any liabilities or claims arising out of their work for the trust.  R. 39-15 at 43–44 (Trust Agreement at § 5.7(a)).[4]   However, Holmes Enterprises waited until after McKinstry made all the distributions from the trust to bring its claims against the appellants and to move to reopen the case.  R. 26 at 17–19.  As a result, the trust has no funds to indemnify the appellants, and the appellants will have to bear the expenses of their defense out of pocket.  Thus, the reopening of the bankruptcy case would prejudice the appellants.  *See In re Berry*, 190 B.R. at 489 ("Prejudice exists where creditors lose their rights to receive a dividend or obtain dischargeability determinations." (citing *Stone v. Caplan*, 10 F.3d 285 (5th Cir. 1994)).   And this prejudice could be cured by ordering Holmes Enterprises to repay some of its disbursements into an escrow account to cover the appellants' costs and fees.  *See*

---

[4] Payment of the appellants' fees and expenses (along with the any other litigation fees and expenses associated with the trust) from the trust had first priority in the payment schedule. R. 53-3 at 4.  Only after these payments were made would Holmes Enterprises be paid back its principal and interest. *Id.*

*Underlying Bankruptcy*, D.E. 2348 at 5 ("[B]ecause Holmes Enterprises accepted distributions of settlement proceeds from the Trust while contemplating pursuing a claim against the Trustee and others for that same settlement, the Court believes it appropriate that Holmes Enterprises should refund at least a portion of such distributions so that the Trustee and others may adequately defend themselves against Holmes Enterprises's allegations.") Thus, the bankruptcy court did not abuse its discretion in conditioning the reopening of the bankruptcy case on Holmes Enterprises's repayment to the trust escrow account.

Holmes Enterprises's primary response is that the bankruptcy court was prohibited from conditioning the reopening on reimbursement under *Law v. Siegel*, --- U.S. ---, 134 S. Ct. 1188 (2014). Specifically, Holmes Enterprises clings to language in *Siegel* that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." 134 S. Ct. at 1194 (internal quotations and citations omitted). Thus, the argument seems to go, if the Bankruptcy Code does not explicitly authorize the bankruptcy court to do something, then the bankruptcy court may not do that thing. And here, the Bankruptcy Code does not explicitly authorize a bankruptcy court to condition reopening on repayment of funds. So, says Holmes Enterprises, the bankruptcy court violated *Siegel* when it ordered Holmes Enterprises to repay its disbursements. The true holding of *Siegel*, however, is much more limited. Instead, *Siegel* held that a bankruptcy court "may not contravene specific statutory provisions" in exercising its inherent equitable power. *Id.* Holmes Enterprises points to no provision of the Code, or to any case law for that matter, that prohibits a bankruptcy court from conditioning reopening on the repayment of disbursed funds. And the bankruptcy court's equitable action here was tied to a provision of the Code—specifically, § 350. So *Siegel* does not preclude the

bankruptcy court from conditioning the reopening on Holmes Enterprises's repayment of disbursements to the trust. *See id.* ("Section 105(a) confers authority to 'carry out' provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.").

Holmes Enterprises also attempts to raise several other "serious questions" about the merits of the bankruptcy court's decision. First, Holmes Enterprises asserts that it only received $118,192.37[5] as a beneficiary of the trust, which is less than the $500,000 the bankruptcy court ordered Holmes Enterprises to repay. R. 21 at 11. And, Holmes Enterprises seems to argue, the only funds available for indemnification are those it was paid as a beneficiary. *Id.* But Holmes Enterprises cites no legal authority (or any other authority) to support this argument. *See id.* And the appellants' indemnification rights were senior in priority to the distributions payable to Holmes Enterprises as a lender. R. 53-3 at 4. The appellants therefore had a right to indemnification *before* Holmes Enterprises received its reimbursements as a lender. As such, the Court sees no reason why the funds Holmes Enterprises received as a lender should not be available for indemnification purposes. Thus, this argument fails.

Second, Holmes Enterprises claims that the appellants received funds from the trust to purchase insurance, and Holmes Enterprises should not be required to reinsure them. R. 21 at 12. But under the trust agreement, the appellants' right to indemnification was absolute (barring a finding of bad faith). R. 35-19 at 44. And the appellants' right (not requirement) to purchase insurance was separate from their right to indemnification. *Id.* at 45. So,

---

[5] McKinstry disputes this amount, stating that Holmes Enterprises received $658,135.59 as a beneficiary. R. 26 at 17.

regardless of whether the appellants obtained insurance, they still have a right to indemnification by the trust. Thus, even if the appellants obtained insurance, the bankruptcy court did not abuse its discretion in ordering repayment.

Third, Holmes Enterprises asserts that the trust was also supposed to cover its fees and expenses. Thus, according to Holmes Enterprises, the appellants should also owe funds to the trust to cover Holmes Enterprises's fees and expenses. R. 21 at 12. This argument misses the mark. The trust would have been able to pay Holmes Enterprises's fees and expenses had it brought its claims prior to the trust's disbursements. So the bankruptcy court did not abuse its discretion by only requiring Holmes Enterprises to repay funds to the trust.

Finally, Holmes Enterprises argues that the bankruptcy court's order is "impermissibly vague" because it has no guidelines about when and if it would be appropriate for the funds to be distributed to the appellants. *Id.* at 13–14. But the order specifies that the reimbursed funds may be used only "so that the Trustee and others may adequately defend themselves against Holmes Enterprises's allegations." *Underlying Bankruptcy*, D.E. 2348 at 5. This order parallels the Trust Agreement, which indemnifies the appellants for "any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees" arising out of their actions for the trust. R. 35-19 at 43–44. So the bankruptcy court's order only attempted to do what the Trust Agreement intended in terms of the indemnification of the appellants. Therefore, the order was not impermissibly vague.

As such, Holmes Enterprises has not raised any serious questions about the merits of the bankruptcy court's order. Accordingly, it is **ORDERED** that Holmes Enterprises's

motion for stay pending appeal of the bankruptcy court's revised order dated October 2, 2015, R. 21, is **DENIED**.

This the 5th day of February, 2016.

Signed By:

*Amul R. Thapar*

**United States District Judge**