UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| *In re* BLACK DIAMOND MINING COMPANY, LLC, et al. <br><br> ──────────────────────────── <br><br> TAFT A. MCKINSTRY, *Trustee of the BD Unsecured Creditors Trust*, and DINSMORE & SHOHL LLP, <br><br>    Appellants, <br><br> v. <br><br> RICHARD HOLMES ENTERPRISES, LLC, <br><br>    Appellee. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil No. 15-96-ART <br><br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Finality is important in litigation; people and companies must be able to move on with their lives. For this reason, a motion to reopen a closed case is not to be taken lightly. Here, Richard Holmes Enterprises, LLC ("Holmes Enterprises") moved to reopen a bankruptcy case. The bankruptcy court agreed to do so, but on one condition: Holmes Enterprises needed to deposit funds in an escrow account first. As discussed in more detail below, the bankruptcy court did not err when it required Holmes Enterprises to deposit the funds. And the court did not err by dismissing the case when Holmes Enterprises failed to do so. The bankruptcy court's decisions are therefore affirmed.

I.

Around the time of the financial crisis, the Black Diamond Mining Company declared Chapter 11 bankruptcy. Per the terms of the Chapter 11 Plan, many of Black Diamond's assets were assigned to a trust that would be administered on behalf of the unsecured creditors. The trust was called the Black Diamond Unsecured Creditors Trust; the trustee was an attorney named Taft McKinstry. *See In re Black Diamond Mining Co., LLC*, Case No. 08-70066-THF (Bankr. E.D. Ky. 2008) [hereinafter *Underlying Bankruptcy*], D.E. 1562 at 34–35; *id.*, Ex. A art. IV(C). Some of the trust's biggest assets were claims against Alvarez & Marsal North America, LLC, and its officers, Ira Genser and Larry Tate (collectively, "A&M"). *Id.*, D.E. 1562 at 60. So McKinstry sued A&M on behalf of the trust. *See McKinstry v. Sergent et al.*, Case No. 7:10-cv-110-ART [hereinafter *In re Black Diamond I*], D.E. 1-1.

Holmes Enterprises was one of the trust's unsecured creditors.[1] Its principal, Richard Holmes, was also the chair of the Trust Committee, which had the right to approve any settlement of the trust's claims against A&M. R. 3 at 5–6; R. 35-19 at 47. Holmes Enterprises also loaned money to help fund the trust's expenses. *See* R. 53-1; R. 53-2. In return, McKinstry agreed to obtain Holmes Enterprises' written consent before settling the case with A&M. R. 53-1 at 2; R. 53-2 at 2–3.

McKinstry eventually settled the case. *See McKinstry v. Genser et al.*, Case No. 7:13-cv-125-ART [hereinafter *In re Black Diamond II*], D.E. 345; *id.*, D.E. 346. Although Holmes Enterprises says that McKinstry settled the case without Holmes Enterprises'

---

[1] Holmes Enterprises was the assignee of Sempra Energy Trading, LLC, which had an unsecured claim of $41.3 million. *Underlying Bankruptcy*, D.E. 1861.

2

approval, *see* R. 21, Holmes Enterprises eventually consented to the settlement. R. 61-5 at 4–5. Holmes Enterprises then asked McKinstry to make the trust's disbursements. *Underlying Bankruptcy*, Trustee's Objection to Motion to Reopen at Ex. N (filed Aug. 26, 2015). McKinstry complied, disbursing some $5.77 million to Holmes Enterprises. R. 26 at 22–23 (citing *Underlying Bankruptcy*, D.E. 2296-1).

After all the funds were distributed, McKinstry filed the final accounting in the bankruptcy court. *Underlying Bankruptcy*, D.E. 2296. Holmes Enterprises objected. *Id.*, Objection of Richard Holmes Enterprises, LLC to Motion of Trustee for Approval of Final Accounting (filed June 1, 2015). In its objection, Holmes Enterprises asked the bankruptcy court not to approve the final accounting until Holmes Enterprises could investigate certain claims that it might have against McKinstry and McKinstry's law firm, Dinsmore & Shohl. (hereinafter collectively "appellants"). *Id.*[2] The bankruptcy court overruled the objection, approved the final accounting, and closed the case. *Id.*, D.E. 2319.

Holmes Enterprises then filed a motion to reopen the case. *Underlying Bankruptcy*, Motion to Reopen Case for the Limited Purpose of Asserting Claims Against Trustee and Professionals, Ex. 1 (filed July 31, 2015). Although the bankruptcy court granted that motion initially, *id.*, D.E. 2333, McKinstry filed a motion for reconsideration. In the alternative, she asked the bankruptcy court to order Holmes Enterprises to return the disbursements that it had received from the trust. *Id.*, Trustee's Emergency Motion for Reconsideration or to Alter or Amend Order at 6 (filed Sept. 18, 2015).[3] Two days later, the bankruptcy court denied the motion to reconsider but ordered Holmes Enterprises to repay

---

[2] The claims were for breach of fiduciary duty.

[3] This money was to be used to indemnify the appellants.

$500,000 to the trust's escrow account as a condition of reopening the case. *Id.*, D.E. 2348. The court ordered this repayment "to ensure that the Trust can honor its obligation to indemnify the Trustee and other protected persons." *Id.* at 4–5.

Holmes Enterprises failed to comply with that order. *See Underlying Bankruptcy*, D.E. 2377 at 2. As a result, the bankruptcy court held a hearing to determine whether to hold Holmes Enterprises in contempt. During the hearing, the court asked Holmes Enterprises' attorney, Mr. Getty, whether Holmes Enterprises could make the payment. *Id.*, D.E. 2392 at 7. Mr. Getty responded that he did not know. *Id.* After the hearing, the bankruptcy court granted the contempt order, which provided as follows:

> "[I]f the Ordered funds [$500,000] are not received by 5:00 p.m. Wednesday, January 27, 2016, RHE shall pay $5,000.00, plus $5,000.00 per day thereafter until the Ordered funds are received. Failure to comply with this Order by February 15, 2016, will result in dismissal of the adversary proceeding."

*Id.*, D.E. 2391 at 2. When February 15 eventually rolled around, Holmes Enterprises filed a declaration stating that, "[a]t all times since September 16, 2015," Holmes Enterprises had less than $500,000 in assets.

In the end, Holmes Enterprises failed to deposit the funds by the deadline. So the bankruptcy court dismissed the case. This appeal followed. *See Richard Holmes Enterprises v. McKinstry et al.*, Case No. 7:16-cv-23-ART, D.E. 1 (E.D. Ky. Feb 25, 2016).

II.

As an initial matter, McKinstry argues that this Court lacks jurisdiction to consider Holmes Enterprises' arguments regarding the contempt order. Holmes Enterprises never appealed the contempt order. And because Holmes Enterprises' arguments concerning the

dismissal order are really challenges to the contempt order, this, says McKinstry, dooms Holmes Enterprises' appeal.

Bankruptcy Rule 8003(a)(3)(B) requires an appellant to attach "the judgment, order, or decree, or the part of it, being appealed" to the notice of appeal. Holmes Enterprises attached only the bankruptcy court's order dismissing the case to the notice of appeal, not the contempt order. *See Richard Holmes Enterprises v. McKinstry et al.*, Case No. 7:16-cv-23-ART, D.E. 1 (E.D. Ky. Feb 25, 2016). As such, Holmes Enterprises never actually appealed the contempt order. And Holmes Enterprises' time to file such an appeal has passed (February 29, 2016, at the latest). *See* Fed. R. Bankr. P. 8002(a)(1) (giving a party 14 days to file an appeal of an order once it becomes final).

But that does not end the inquiry. Courts construe notices of appeal liberally. *Caudill v. Hollan*, 431 F.3d 900, 907 (6th Cir. 2005) ("While the requirements of Fed. R. App. P. 3(c)(1) are jurisdictional, [precedent] require[s] that [courts] construe the jurisdictional requirements of [the rule] liberally."). Here, the dismissal order arose directly from the contempt order—the contempt order stated that the bankruptcy court would dismiss the case if Holmes Enterprises failed to pay by February 15, 2016. So any appeal of the dismissal order, as a logical matter, also challenges the validity of the contempt order. *See McLaurin v. Fischer*, 768 F.2d 98, 101 (6th Cir. 1985) ("Nevertheless, the law is well settled that an appeal from a final judgment draws into question all prior non-final rulings and orders."). Moreover, technical errors do not doom an appeal, especially when prejudice is minimal. *Id.* at 102 ("In considering the impact of technical errors upon the sufficiency of a notice of appeal, the Supreme Court has repeatedly emphasized that absent a showing of prejudice such errors are treated as harmless." (citations omitted)). McKinstry fails to

explain how Holmes Enterprises' failure to appeal the contempt order has prejudiced her. It came as no surprise that Holmes Enterprises was upset with the contempt order. And the parties have already briefed the issue of the propriety of the contempt order on the merits. *See* R. 89 at 23–27; R. 91 at 23–26; R. 98 at 13–16. Holmes Enterprises' failure to expressly appeal the contempt order is therefore harmless. *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (holding that the defect in the notice of appeal did not mislead or prejudice in part because the parties briefed and argued the issue on the merits). Construing the notice of appeal liberally, this Court has jurisdiction over Holmes Enterprises' appeal of the contempt order.

### III.

### A.

Holmes Enterprises argues that the bankruptcy court could not condition reopening of the bankruptcy on repayment of funds. *See* R. 89-1 at 2; R. 91-1 at 2. This Court reviews a bankruptcy court's exercise of its equitable powers for abuse of discretion. *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993).

Bankruptcy courts may reopen cases, 11 U.S.C. § 350(b), but, in doing so, they must ensure that the reopening is just. *See In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (holding that § 105(a) of the Bankruptcy Code empowers bankruptcy courts "to take appropriate equitable measures needed to implement other sections of the Code"); *In the matter of Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991) ("[In deciding to reopen a case,] the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice."). And when reopening a case would place an unfair financial burden on the other side, the bankruptcy court may condition

reopening on the moving party's agreement to reimburse the other side's fees and costs. *See, e.g.*, *In re Oglesby*, 519 B.R. 699, 706 (Bankr. N.D. Ohio) (requiring the movant to reimburse the nonmovant's fees and costs because "the nature of the prejudice experienced by [the nonmovant] is of a type subject to cure by reimbursement"); *In re Minniear*, 88 B.R. 1005, 1006 (Bankr. W.D. Mo. 1988) (requiring the movant to compensate nonmovant's time and expenses incurred during the movant's delay in moving for reopening); *In re Brown*, 60 B.R. 983, 985 (Bankr. S.D. Ohio 1986) (conditioning reopening on payment of nonmovant's attorney's fees "[t]o alleviate any prejudice to [the nonmovant] in allowing debtors to reopen their case"); *In re Scism*, 41 B.R. 384, 388 (Bankr. W.D. Okla. 1984) (requiring the movant to pay reasonable attorney's fees expended by the nonmovant because "[i]t is only reasonable in this case that the [nonmovant] should not bear the burden of the [movant's] error").

Here, reopening would have placed a financial burden on the appellants. Had Holmes Enterprises brought this claim before the case was closed, the trust would have indemnified the appellants. R. 39-15 at 43–44 (Trust Agreement at § 5.7(a)).[4] Holmes Enterprises did not. Instead, Holmes Enterprises expressed concerns with the A&M settlement, but waited until after McKinstry made all the distributions from the trust and the case was closed. As a result, the trust has no funds with which to indemnify the appellants. Thus, the reopening of the bankruptcy case prejudiced the appellants. *See In re Berry*, 190 B.R. 486, 489 (Bankr. S.D. Ga. 1995) ("Prejudice exists where creditors lose their rights to receive a dividend or obtain dischargeability determinations." (citing *Stone v. Caplan*, 10 F.3d 285 (5th Cir.

---

[4] Payment of the appellants' fees and expenses (along with any other litigation fees and expenses associated with the trust) from the trust had first priority in the payment schedule. R. 53-3 at 4. Only after these payments were made would Holmes Enterprises be paid back its principal and interest. *Id.*

1994))).  To cure this problem, the bankruptcy court ordered Holmes Enterprises to repay some of its disbursements into an escrow account.  *See Underlying Bankruptcy*, D.E. 2348 at 5 ("[B]ecause Holmes Enterprises accepted distributions of settlement proceeds from the Trust while contemplating pursuing a claim against the Trustee and others for that same settlement, the Court believes it appropriate that Holmes Enterprises should refund at least a portion of such distributions so that the Trustee and others may adequately defend themselves against Holmes Enterprises' allegations.").  The bankruptcy court was well within its discretion in doing so.  *See In re Berry*, 190 B.R. at 489 (holding that if a bankruptcy court finds that reopening would be prejudicial to the other party, "the [c]ourt may condition the reopening of a case on alleviation of such prejudice").

Holmes Enterprises argues that the Bankruptcy Code does not specifically authorize such a condition.  So, says Holmes Enterprises, it is beyond the bankruptcy court's authority to order it.  Holmes Enterprises points to *Law v. Siegel*, 134 S. Ct. 1188 (2014) for support.  There, the Supreme Court stated that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  134 S. Ct. at 1194 (internal quotations and citations omitted).  The holding of *Siegel*, however, is much more limited than Holmes Enterprises contends.  *Siegel* simply held that a bankruptcy court "may not contravene specific statutory provisions" in exercising its inherent equitable power.  *Id.*  Holmes Enterprises points to no provision of the Code, or to any case law for that matter, that prohibits a bankruptcy court from conditioning reopening on the repayment of disbursed funds.  Obviously, the bankruptcy court had the power to reopen the case.  *See* 11 U.S.C. § 350.  And nothing in § 350 forbids the bankruptcy court from conditioning reopening on such a deposit.  As such, the bankruptcy court had the authority to condition

8

reopening on repayment of funds.  *Cf. Dietz v. Bouldin*, 579 U.S. ___, slip op. at **4–5 (June 9, 2016) (noting that a district court has inherent power to supplement rules to make them effective so long as those powers do not "contradict any express rule or statute" and are "a reasonable response to a specific problem").

Holmes Enterprises raises several more arguments as to why the bankruptcy court erred when it required repayment as a condition of reopening the case.  First, Holmes Enterprises argues that the bankruptcy court improperly ordered Holmes Enterprises to repay funds that it received as a lender.  In support of this argument, Holmes Enterprises asserts that it only received $118,192.37[5] as a beneficiary of the trust, which is less than the $500,000 the bankruptcy court ordered Holmes Enterprises to repay.  R. 59 at 68.  And Holmes Enterprises claims that the only funds available for indemnification are those it was paid as a beneficiary.  *Id.*  But Holmes Enterprises cites no case or other authority to support this argument.  *See id.*  Moreover, the appellants' indemnification rights were senior in priority to Holmes Enterprises' rights as a lender.[6]  R. 53-3 at 4.  This means that the appellants would have been indemnified *before* Holmes Enterprises received any distributions from the trust.  So, if Holmes Enterprises had raised its claims against the appellants in a timely manner, the distributions Holmes Enterprises received as a beneficiary *and* a lender would still have been in the trust for indemnification purposes.  As such, the funds Holmes Enterprises received as a lender should be available for indemnification purposes now.

---

[5] McKinstry disputes this amount, stating that Holmes Enterprises received $658,135.59 as a beneficiary.  R. 26 at 17.

[6] Holmes Enterprises received the following distributions from the trust as a third-party lender: $1,290,000 in repayment of Holmes Enterprises' loans to the trust, $78,462.50 in interest, and $3,749,124.69 in litigation-funding fees.  R. 29 at 18; *Underlying Bankruptcy*, D.E. 2296-1 at 1–2.

Second, Holmes Enterprises claims that the appellants received funds from the trust to purchase insurance, and that Holmes Enterprises should not be required to reinsure them. R. 59 at 69. But under the trust agreement, the appellants had the *right* to purchase insurance—they were not required to do so. R. 35-19 at 44–45 ("The Liquidating Trustee shall be *authorized* to obtain all reasonably necessary insurance coverage for herself and the Trust Professionals . . . [and any purchased liability insurance] *may*, at the sole option of the Liquidating Trustee, remain in effect for a reasonable period after the conclusion of the Liquidating Trustee's service[.]" (emphasis added)). The appellants' right to indemnification, on the other hand, was absolute (barring a finding of bad faith). *Id.* at 44 ("Each of the Indemnified Parties . . . *shall* incur no liability[.]" (emphasis added)). Thus, even if the appellants obtained insurance, the bankruptcy court did not abuse its discretion in ordering repayment.

Third, Holmes Enterprises asserts that the trust was also supposed to cover Holmes Enterprises' fees and expenses. Thus, according to Holmes Enterprises, the bankruptcy court erred by not also ordering the appellants to repay funds to the trust to cover Holmes Enterprises' fees and expenses. R. 59 at 69. The problem with this argument, however, is that the trust would have been able to pay Holmes Enterprises' fees and expenses had Holmes Enterprises brought its claims before the trust's disbursements. Instead, Holmes Enterprises chose to sit on its claims until after McKinstry had distributed all of the funds from the trust. McKinstry, on the other hand, distributed funds from the trust without knowing that she would need to be indemnified later on. Thus, out of fairness, the bankruptcy court ordered only Holmes Enterprises to pay back funds for indemnification. So

the bankruptcy court did not abuse its discretion by requiring only Holmes Enterprises to repay funds to the trust.

Finally, Holmes Enterprises argues that the bankruptcy court's order is "impermissibly vague" because it has no guidelines about when and if distributing funds to the appellants would be appropriate. *Id.* at 71–72. Holmes Enterprises cites no authority in support of this argument, nor does Holmes Enterprises suggest a standard under which this Court should analyze whether the order is in fact impermissibly vague. *See id.* "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal quotations and citations omitted). Accordingly, this argument is deemed waived.

B.

Holmes Enterprises also claims that the bankruptcy court lacked jurisdiction to add conditions because McKinstry had already filed a notice of appeal of the order reopening the case. Generally, "an effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). A lower court retains jurisdiction to enforce the order or judgment, but the court "may not alter or enlarge the scope of its judgment pending appeal[.]" *Id.* And, Holmes Enterprises claims, the new condition of repayment was an enlargement of the bankruptcy court's original order reopening the case. Thus, the argument goes, the bankruptcy court did not have jurisdiction to reconsider the order reopening the case.

11

The question, then, is when did the bankruptcy court lose jurisdiction? That depends on whether McKinstry's appeal was final or interlocutory. But the Court need not decide that issue because the bankruptcy court had jurisdiction to modify its order either way. If the order was final for the purposes of appeal, then Bankruptcy Rule 8002(b) governs. Under Rule 8002(b), if a party files a timely motion to alter or amend judgment under Bankruptcy Rule 9023, then the notice of appeal is not effective until the Rule 9023 motion is ruled upon. Here, McKinstry filed its motion to reconsider or alter or amend judgment pursuant to Rule 9023. *See Underlying Bankruptcy,* Trustee's Emergency Motion for Reconsideration or To Alter or Amend Order (filed Sept. 18, 2015). And McKinstry filed that motion on September 18, 2015, two days after the bankruptcy court reopened the case. *Id.*; *id.*, D.E. 2333 (filed Sept. 16, 2015) (order reopening case). So McKinstry's Rule 9023 motion was timely. *See* Bankr. Rule 9023 (a party has 14 days to file a motion for reconsideration). Thus, if the order was a final one, the bankruptcy court retained jurisdiction to alter or amend the judgment after the appeal was filed.

If this was an interlocutory appeal, on the other hand, the Court must look to 28 U.S.C. § 158, which governs appeals of bankruptcy court orders to district courts. Under § 158(a), a district court "shall have jurisdiction to hear appeals from final judgments, orders, and decrees; . . . and *with leave of the court*, from other interlocutory orders and decrees[.]" (emphasis added). A plain reading of this statute demonstrates that a district court does not gain jurisdiction over an appeal of an interlocutory order until the district court grants leave to appeal. Until that time, the bankruptcy court retains jurisdiction. Any other rule would create a situation in which no court has jurisdiction over an appealed interlocutory order from when the notice of appeal is filed until the district court rules on the motion for leave to

appeal. And such a result would run contrary to Bankruptcy Rule 1001, which states that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." No court having jurisdiction over a case, even temporarily, would prevent the just and speedy determination of the case or proceeding. Moreover, having such a rule—no jurisdiction—would allow the disruptive litigant to slow litigation by simply seeking interlocutory appeals. And Rule 1001 obviously requires otherwise.

Here, McKinstry filed her motion to reconsider on September 18, 2015. *See Underlying Bankruptcy*, Trustee's Emergency Motion for Reconsideration or To Alter or Amend Order (filed Sept. 18, 2015). She then filed her notice of appeal and her motion for leave to appeal the order reopening the case on September 30, 2015. R. 1. Two days later, the bankruptcy court ruled on the motion to reconsider. *Underlying Bankruptcy*, D.E. 2348 (filed Oct. 2, 2015). This Court did not grant McKinstry's motion for leave to appeal until November 19, 2015, six weeks after the bankruptcy court modified its initial order reopening the case. R. 17. Thus, if the appeal was interlocutory, the bankruptcy court still had jurisdiction over the order reopening the case at the time the court reconsidered. So, regardless of whether the order reopening the case was final or interlocutory, the bankruptcy court had jurisdiction to modify the order. Because the bankruptcy court had the authority to condition reopening on repayment of funds and the jurisdiction to modify its initial order reopening the case, the bankruptcy court's reconsideration order must be affirmed.

IV.

A.

Holmes Enterprises next argues that contempt sanctions, especially dismissal, were inappropriate in this case. Holmes Enterprises does not dispute the fact that courts generally

13

have the power to hold parties in contempt and impose sanctions against them for failing to comply with court orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[I]t is firmly established that the power to punish for contempts is inherent in all courts." (internal quotations omitted)); *Rolex Watch, U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (holding that a court can put a party in contempt if there is clear and convincing evidence that the party "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." (internal quotations omitted)). Instead, Holmes Enterprises states that "[c]ontempt sanctions are . . . improper where the failure to act is merely the failure to pay money pursuant to a court judgment." R. 89 at 24 (quoting *Ky. Petro. Operating Ltd. v. Golden*, 2014 WL 4103934, at *2 (E.D. Ky. Aug. 19, 2014) (citing *U.S. Leather, Inc. v. Mitchell Mfg. Grp., Inc.*, 276 F.3d 782, 789 (6th Cir. 2002))). In those situations, Holmes Enterprises argues, state law usually provides remedies other than contempt sanctions to collect the money, such as garnishment proceedings. *Golden*, 2014 WL 4103934, at *2. Here, the money was owed pursuant to a court order. And, the argument seems to go, this situation is the same as one in which a party fails to pay money pursuant to a court judgment.

What Holmes Enterprises ignores, though, is that this case does not involve a money judgment, but rather noncompliance with the bankruptcy court's reconsideration order. Courts have the authority to use the contempt power to force compliance with an order to post money. *See Elec. Workers Pension Tr. Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003). In *Electrical Workers Pension Trust Fund*, the Sixth Circuit held that "the sanction of civil contempt is more properly considered a compensatory remedy and an encouragement to comply with court orders." *Id.* The court reasoned that

"the objective of any contempt determination is to enforce the message that court orders and judgments are to be taken seriously." *Id.* The question, then, is what the purpose of the sanctions is. If the sanctions are just being used as a collection remedy, then contempt sanctions are inappropriate. But if the sanctions are being used to enforce compliance with a court's orders, then contempt sanctions are appropriate. Here, the bankruptcy court was using the contempt sanctions to enforce compliance with the court's reconsideration order. *See Underlying Bankruptcy*, D.E. 2391 (contempt order). So contempt sanctions were appropriate in this case.

B.

Finally, Holmes Enterprises argues that it could not afford to pay the $500,000 and that the bankruptcy court therefore erred by dismissing the case. As a general matter, "[a] party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). And according to Holmes Enterprises, it has had less than $500,000 on hand for the past year and a half. Thus, Holmes Enterprises argues that it was "[unable] to comply with [the bankruptcy court's] order"—because it couldn't afford to—and that the bankruptcy court therefore should not have dismissed the case. *Id.*

The problem with that argument is that Holmes Enterprises did not assert it in a timely fashion. When a movant establishes a *prima facie* case for contempt based on the violation of a court order, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Elec. Workers Pension Trust Fund*, 340 F.3d at 379; *see Rolex Watch*, 74 F.3d at 720 (requiring the party in contempt to "produce evidence showing a present inability to comply

15

with the court's order"). Holmes Enterprises failed to do that here. During the contempt hearing on January 25, 2016, the court asked Richard Getty if Holmes Enterprises would be able to pay the $500,000, and Getty responded, "I do not know." R. 44-2 at 7. It was not until February 15, 2016, that Holmes Enterprises produced evidence that it could not pay the $500,000. *See Underlying Bankruptcy*, D.E. 2394 (filed Feb. 15, 2016) (notice of filing of Holmes's affidavit). Thus, during the contempt hearing, Holmes Enterprises failed to show that it was "present[ly]" unable to comply with the bankruptcy court's order. *Rolex Watch*, 74 F.3d at 720. That means the bankruptcy court did not abuse its discretion when it entered the contempt order. *See Laforte v. Lorraine Cab Co.*, 33 F.3d 54, 1994 WL 456785, at *2 (6th Cir. Aug. 23, 1994) ("While [the nonmovant] responded [to the contempt motion] by challenging the validity of the underlying orders, he presented no other defense and offered no evidence of his inability to comply. In light of [the nonmovant's] failure to carry his burden of production, the district court did not abuse its discretion in holding [the nonmovant] in contempt.").

Of course, Holmes Enterprises could have raised its inability-to-pay defense in a motion for relief from the order under Bankruptcy Rule 9024. *See also* Fed. R. Civ. P. 60(b). But Holmes Enterprises did not do this either. Instead, Holmes Enterprises just filed a "Notice of Filing of Declaration of Richard Holmes and Order of District Court." *Underlying Bankruptcy*, D.E. 2394. So the bankruptcy court did not err in failing to consider Holmes Enterprises' inability-to-pay defense.

In sum, the bankruptcy court did not err in imposing contempt sanctions in this case, including dismissal. And the bankruptcy court did not err in dismissing the case without

considering Holmes Enterprises' untimely inability-to-pay defense. So the bankruptcy court's contempt order and dismissal order are affirmed.

V.

In conclusion, the bankruptcy court had the equitable power to condition reopening of the bankruptcy case on repayment of funds to ensure that appellants could be indemnified if Holmes Enterprises' claims against them failed. And because this Court had not yet granted leave to appeal the order reopening the case, the bankruptcy court still retained jurisdiction over that order to modify it. So the bankruptcy court's reconsideration order is affirmed. Moreover, the bankruptcy court has the inherent power to impose contempt sanctions in order to enforce its orders. Here, Holmes Enterprises failed to comply with the bankruptcy court's reconsideration order. The bankruptcy court therefore did not err in imposing sanctions, including dismissal. And Holmes Enterprises failed to present its inability-to-pay defense in a timely fashion. As such, the bankruptcy court's contempt order and dismissal order are also affirmed.

Accordingly, it is **ORDERED** that:

(1) The bankruptcy court's reconsideration order conditioning reopening on the repayment of funds, *Underlying Bankruptcy*, D.E. 2348 (filed Oct. 10, 2015), is **AFFIRMED**.

(2) The bankruptcy court's contempt order, *Underlying Bankruptcy*, D.E. 2391, is **AFFIRMED**.

(3) The bankruptcy court's order dismissing the adversary proceeding, *In re Black Diamond Mining Co., LLC, et al.*, Case No. 15-07007-THF (Bankr. E.D. Ky. 2015), D.E. 7, is **AFFIRMED**.

(4)   McKinstry's appeal of the order reopening the case, R. 1, is **DISMISSED AS MOOT**.

(5)   The parties' motions to seal, R. 72; R. 75; R. 84; R. 87; R. 90; R. 95, are **GRANTED** because the briefs and documents reference various confidential agreements and related documents. To protect the public's interest in having access to Court filings, the parties have filed public, redacted versions of their briefs on the record. *See* R. 74; R. 77; R. 85; R. 88; R. 93; R. 97. The Clerk of the Court shall keep the parties' briefs and other filings, R. 73; R. 76; R. 86; R. 89; R. 91; R. 98, **UNDER SEAL**.

(6)   Holmes Enterprises' motion for leave to appeal the bankruptcy court's order denying the stay, R. 80, is **DENIED AS MOOT**. McKinstry's motion to dismiss Holmes Enterprises' appeal of the bankruptcy court's denial of the stay, R. 81, is also **DENIED AS MOOT**.

This the 16th day of June, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge